Rel: July 31, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2026-0207

_____

### Traci S. Rose

### v.

### Paradise Island RV Park, Terry Hope, Judy Hope, and Deanna Hope

### Appeal from Talladega Circuit Court
### (CV-25-900537)

EDWARDS, Judge.

In October 2025, Traci S. Rose filed in the Talladega Circuit Court ("the trial court") an emergency petition for injunctive relief and a request for an emergency hearing; Rose alleged that her landlords, Terry Hope, Judy Hope, and Deanna Hope ("the landlords"), and Paradise

Island RV Park ("the RV Park") had disconnected the electric service to a lot she rented located in the landlords' and the RV Park's premises. At the October 22, 2025, hearing on her petition, Rose admitted that electric service had been restored. The trial court entered an order and an amended order on October 23, 2025, granting Rose a preliminary injunction prohibiting the landlords and the RV Park from "caus[ing] electrical services to be disconnected pending further orders of the [trial] court."[1] The order and amended order also required Rose to pay her monthly lot rent and electric-bill amount into the trial court by November 3, 2025.[2] In addition, the order and the amended order both indicated that the landlords had indicated that they had served an eviction notice on Rose and that Rose had admitted receipt of that eviction notice. In the amended order, the trial court set a status conference for December 18, 2025.

---

[1]The trial court amended its order the same day to make a few irrelevant changes to the text of the order, which are irrelevant to this appeal, and to change the date of the status conference from December 19, 2025, to December 18, 2025.

[2]The record reflects that Rose's monthly lot rent was $500.

On November 3, 2025, Rose filed an "emergency motion for sewage contamination abatement, eviction stay, and suspension of [her] escrow bond," i.e., the obligation that she pay her monthly lot rent and electric-bill amount into the trial court. In that motion, Rose alleged that raw sewage had "backed up" on the leased premises on September 17, 2025, and again on November 3, 2025. Rose further indicated that the October 23, 2025, order and amended order had required her to pay her monthly lot rent and electric-bill amount into the trial court "if payment[] was rejected by the [landlords]." Rose alleged that the dispute over her monthly lot rent and electric bill, about which the landlords had complained at the October 22, 2025, hearing, had been prompted by her report of the September 17, 2025, sewage spill to the authorities. She further alleged that, although she had tendered funds to pay her November 2025 monthly lot rent and electric bill to the landlords, the landlords had rejected that payment and that she had paid the money into the trial court on November 3, 2025, as directed in the October 23, 2025, order and amended order.[3]

---

[3]The clerk's record supports Rose's statement in her November 3, 2025, motion and her statement at the December 18, 2025, status conference, a transcript of which is contained in the record on appeal,

Without apparent cause, the trial court issued another amended order relating to the October 22, 2025, hearing on November 3, 2025 ("the second amended order"). In the second amended order, the trial court inexplicably ordered that the landlords and the RV Park "shall cause electrical services to be disconnected pending further orders of the [trial] court."[4] The second amended order also reset the status conference to December 19, 2025, the date specified in the original order and not the first amended order.

On December 1, 2025, Rose filed a motion seeking an expedited hearing on her motion relating to the sewage contamination. In that motion, she reiterated that she desired that the trial court suspend the requirement that she pay her monthly lot rent and electric-bill amount into the trial court based on the failure of the landlords to abate the sewage hazard, thus restoring the habitability of the leased premises. She also stated that she could not "help but perceive the requirement of

---

indicating that she had paid money into the trial court on November 3, 2025. However, the clerk's record indicates that she paid into the trial court the sum of $500, which is Rose's monthly lot rent and does not include an amount for her electric bill.

[4]In response to the second amended order, the landlords and the RV Park apparently again disconnected electrical service to Rose's trailer.

the escrow bond as being punitive, rather than constructive." The case-action-summary sheet indicates that the trial court set Rose's motions for a hearing to be held on January 7, 2026, and set the case for a trial to be held on January 22, 2026.

On December 19, 2025, after the December 18, 2025, status conference, the trial court entered an order memorializing that status conference. The order indicated that Rose had informed the trial court that she did not intend to voluntarily leave the premises and that the landlords had informed the trial court that they intended to proceed with formal eviction proceedings. The trial court set aside the provision of its second amended order relating to the October 22, 2025, hearing, which had directed the landlords and the RV Park to disconnect electric service at the premises, and restored its original directive that the electric service not be disconnected pending further order of the trial court. Regarding rent, the trial court ordered that Rose pay her December 2025 monthly lot rent and electric-bill amount into the trial court by the close of business on December 19, 2025, and that she pay her January 2026 and February 2026 monthly lot rent and electric-bill amounts into the

trial court by January 3, 2026, and February 3, 2026, respectively. Finally, the trial court reset the trial to February 10, 2026.

Rose filed a motion seeking reconsideration of the December 19, 2025, order. Among other things, Rose contended that the trial court lacked subject-matter jurisdiction to order her to pay her monthly lot rent and electric-bill amount into the trial court because, she said, the landlords and the RV Park did not have a pending action seeking possession of the leased premises. See Ala. Code 1975, § 35-9A-405(a) (providing, in pertinent part, that, "[i]n an action for possession or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount the tenant may recover under the rental agreement or [Ala. Code 1975, § 35-9A-101 et seq.,] this chapter," that "[i]t is in the court's discretion whether the tenant is to remain in possession," and that "[t]he tenant shall pay into court rent accrued and thereafter accruing as it comes due"). She also complained that, if the payment of her monthly lot rent and electric-bill amount into the trial court was intended to be security for the preliminary injunction under Rule 65, Ala. R. Civ. P., the monthly lot rent was not part of any damages that would be proximately caused by the preliminary injunction

6

prohibiting the landlords and the RV Park from disconnecting electric service to the leased premises. Rose further contended that the entry of the trial court's December 19, 2025, order denied her due process.

On December 23, 2025, the landlords and the RV Park filed an answer to Rose's petition and a counterclaim seeking possession of the leased premises and $1,231.43 in past-due monthly lot rent and electric bills. Rose moved to dismiss the counterclaim, arguing that the trial court lacked subject-matter jurisdiction over what she characterized as the landlords' and the RV Park's unlawful-detainer claim. She also contended that the eviction notice the landlords served on her had not claimed that the eviction was based on nonpayment of monthly lot rent and electric bills and that her cotenant, Jim Mims, was a necessary party to the attempt to recover possession of the leased premises. On January 6, 2026, the landlords and the RV Park amended their counterclaim to request that Rose be held in contempt for failing to comply with the December 19, 2025, order by failing to pay her January 2026 monthly lot rent and electric-bill amount into the trial court.

After the trial, on March 12, 2026, the trial court entered an order holding Rose in contempt but imposing no sanction, restoring possession

7

of the leased premises to the landlords and the RV Park, and awarding the landlords and the RV Park a judgment in the amount of $2,537.89. Rose filed a notice of appeal on March 17, 2026. We dismiss the appeal.

The trial court ordered Rose to pay her monthly lot rent and electric-bill amount into the trial court in its October 23, 2025, and December 19, 2025, orders. The clerk's record indicates that, on November 3, 2025, Rose paid $500 into the trial court, in apparent partial compliance with the October 23, 2025, order and amended order. Although the trial court indicated at the October 22, 2025, hearing that it would determine whether the money paid into the trial court would be returned to Rose or disbursed to the landlords and the RV Park, nothing in the record reflects that the trial court ordered the disbursement of that money during the pendency of the litigation. The trial court's March 12, 2026, order also fails to direct the disposition of the $500 Rose paid into the trial court.

The failure of the trial court to address the money paid into it renders the March 12, 2026, order nonfinal. See Jackson v. Sasser, 158 So. 3d 469 (Ala. Civ. App. 2014) (determining that the failure of the Covington Circuit Court to disburse all the interpleaded funds on deposit

8

with the clerk rendered the purported final judgment, which had directed disbursement of only a portion of those funds, a nonfinal judgment); <u>see also</u> § 35-9A-405(a) (providing, in pertinent part, that, in an action between a landlord and a tenant, "[t]he party to whom a net amount is owed shall be paid first from the money paid into court, and the balance by the other party"); Ala. Code 1975, § 6-6-351(c) (requiring that, upon disposition of an appeal of an unlawful-detainer judgment to a circuit court from a district court, "the [circuit] court shall direct the clerk as to the disposition of the funds paid to the clerk"); Rule 67, Ala. R. Civ. P. (providing, in pertinent part, that any "fund so deposited [with the clerk of the court] … shall be paid only upon the check of the clerk of the court, annexed to its certified order for the payment, and in favor of the person to whom the order directs the payment to be made"); <u>McGhee v. Housing Auth. of Birmingham Dist.</u>, 890 So. 2d 122, 127 and n.4 (Ala. Civ. App. 2003) (quoting § 6-6-351(c) and affirming the disbursement of money for rent payments deposited with the clerk during the pendency of an appeal from an unlawful-detainer judgment to the successful landlord and indicating that the tenant could "properly claim a setoff … in the amount of the [money] paid into court"). A judgment must be final to support an

9

appeal. Ala. Code 1975, § 12-22-2; <u>Wingard v. Wingard</u>, 625 So. 2d 441, 442 (Ala. Civ. App. 1993). Accordingly, we dismiss Rose's appeal as having been taken from a nonfinal judgment.

APPEAL DISMISSED.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.